**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DANNY W. EUBANKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03-CV-427-WDS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

This matter is before the Court on a Report and Recommendation of United States Magistrate Judge Clifford J. Proud that the Court affirm the decision of the Administrative Law Judge and find that plaintiff Danny W. Eubanks is not disabled. The plaintiff has filed an objection to this recommendation, therefore, the Court will make a de novo review of those portions of the record to which objections were made. 28 U.S.C. §636(b)(1).

**BACKGROUND**

The plaintiff was born on March 20, 1982 and, in 1995, was found to be disabled and eligible for benefits as of September 1995 based on a primary diagnosis of attention deficit hyperactivity disorder with a secondary diagnosis of a history of oppositional defiant disorder. In 1996 Congress amended the provisions of the statute which govern the standard for children seeking SSI benefits. *See* 42 U.S.C. §1382c(a)(3)(C). Congress also mandated that a re-determination of eligibility for disability be made using the revised standard. *See,* § 1382c.

Plaintiff was re-evaluated, pursuant to this new provision, and in September of 1999 the ALJ determined that the plaintiff was not entitled to benefits under the new standard. Plaintiff

sought review by the Appeals Council, which, on March 14, 2002, vacated the ALJ's decision on reconsideration and remanded the action to the ALJ for a determination of whether the plaintiff met the adult standard for disability.[1]  A second hearing was held in 2002 by ALJ Thomas and in January of 2003, ALJ Thomas determined that plaintiff's entitlement to childhood disability benefits had ended as of July 1, 1997, and that he was not entitled to benefits as an adult. Plaintiff sought review, which was denied and the January 2003 decision became the final agency determination.  Plaintiff then filed an action for review with this Court.  At that point, the Commissioner sought remand because the 2002 hearing tape and the plaintiff's claim file were not able to be located.  The action was remanded and an third hearing was held on February 21, 2006 before ALJ George A. Mills, III.  ALJ Mills issued his decision in July of 2006, finding that the plaintiff was not disabled as an adult, and that he was not disabled as a child.  It is this decision that is the subject of review by this Court.

Plaintiff asserts that the ALJ failed to consider all of the report of Dr. Amble, which addressed testing of the plaintiff that was administered in January of 1999 and that the ALJ erred in determining that the plaintiff was not entitled to childhood benefits based on psychological testing done on plaintiff as an adult by Dr. Peterson.  The plaintiff seeks a remand for additional hearings on the issue of plaintiff's mental retardation.  The plaintiff does not object to the legal findings of the magistrate judge, only to the factual determinations made by the ALJ.

### DISCUSSION

It is well settled that the findings of facts by the Commissioner, if supported by substantial evidence, "shall be conclusive. . ." 42 U.S.C. § 405(g). Therefore, if ALJ Mill's

---

[1] Plaintiff turned 18 on March 20, 2000.

2

findings are supported by substantial evidence, they are entitled to deference by this Court. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles,* 402 U.S. 389, 401 (1971). In reviewing a finding to determine if there is "substantial evidence" the Court is to consider the entire record, however, the Court is not to re-weigh evidence, resolve conflicts, determine issues of credibility of witnesses, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).

The determination of childhood disability is based upon a three-step process involving three questions: whether the child claimant is engaged in substantial gainful activity; whether the child has an impairment or combination of impairments that are "severe"; or whether the impairment or combination of impairments are medically equal or are functionally equal to the severity of a listed impairment. 20 CFR §416.924(a). If the first question is answered "yes," or either of the later questions are answered "no" then the child is not disabled.

The amendment to the rules, both at the interim, and the final rules stages defines the statutory standard of "marked and severe functional limitation" with reference to severity of a listed impairment as indicated in the third question. The final rules, which went into effect in 2001, provide that the functional equivalence requires that the impairment be of a listing-level of severity, which means that the child has a marked limitation in two domains of functioning, or an extreme limitation in one domain of functioning. 20 CFR §416.926a.

The Court has reviewed those portions of the record to which plaintiff has raised an objection. Plaintiff's objections are that the ALJ failed to consider all of the report of Dr. Amble and that the ALJ failed in determining that the plaintiff was not entitled to childhood benefits

3

when he referred to psychological testing done on plaintiff as an adult by Dr. Peterson.

The record reveals that the plaintiff has had numerous evaluations beginning in 1997. Initially, in June of 1997, he was evaluated by James S. Peterson, Ph.D. who determined plaintiff did not have diagnosable psychiatric problems. He was re-evaluated in 1999 by Bruce Amble, Ph.D. who determined that plaintiff was reading at the fifth grade level, and had borderline mental retardation with an IQ of 67. In May of 2002, when he was 20 years old, plaintiff was evaluated by Stephen G. Vincent, Ph.D. who determined that plaintiff had adjustment disorder and borderline intellectual functioning. In August of 2003, plaintiff was evaluated by Richard C. Parks, M.D. who diagnosed plaintiff with ADHD, depression and social phobias as well as avoidant type personality. Plaintiff was given an antidepressant for his depressive symptoms. Finally, in April of 2006, plaintiff was evaluated again by Dr. Peterson who evaluated plaintiff at an 86 on his IQ examination, which is at the low-average range of functioning. His WRAT-3 testing for reading, spelling and math indicates scores which were consistent with his IQ testing of low-average competency. The results on his MMPI–II test were determined by Dr. Peterson to be invalid, and he found plaintiff's scores to be consistent with a deliberate attempt to have bad-test results.[2]

Plaintiff's objections really are that the ALJ erred by not finding that the plaintiff qualified for benefits based upon childhood mental retardation, under Listing 112.05D. When Congress passed the Personal Responsibility and Work Opportunity Act of 1996, as indicated earlier, it required the Commissioner to redetermine the eligibility of all persons under the age of

---

[2]Dr. Peterson indicated that these scores showed a "deliberate attempt on the part of the test taker to appear more psychologically disturbed than is actually the case." (Tr. 400-02.)

4

18 who sought benefits due to disability. See note to 42 U.S.C. § 1382c. This reevaluation was to be made without regard to medical improvement. Plaintiff asserts that the ALJ improperly reviewed his medical records and both failed to consider take into consideration of all of Dr. Ambles's findings.[3] Only Dr. Amble found plaintiff to have mental retardation. Given the number of evaluations which plaintiff has had and clinical observations in the record before the ALJ, the Court simply cannot find that the ALJ reached an improper decision with respect to plaintiff's case.

The Court, in reviewing the record, must simply determine whether the findings of the ALJ are supported by the record. *Brewer*, 103 F.3d at 1390. Clearly, ALJ Mills weighed the competing evidence and, based on the evidence before him, reached the conclusion that the earlier IQ score was based on invalid testing. Although there is conflicting evidence in the record, the decision the ALJ reached is sufficiently supported by substantial evidence, and therefore, is accepted by this Court. *Delgado v. Brown*, 782 F.2d 79, 82 (7th Cir. 1986).

The Court **FINDS** that the plaintiff's claim that the ALJ improperly relied on testing performed by Dr. Peterson is without merit. Plaintiff makes the claim that Dr. Peterson's testing should not be considered by this Court and should not have been considered by the ALJ because it was administered when the plaintiff was an adult. Plaintiff offers nothing other than argument on this point.

Accordingly, the Court **ADOPTS** the recommendation of the magistrate judge and

---

[3]Dr. Amble found, during the 1999 testing of the plaintiff, that the test did not have valid results because plaintiff was tired and lethargic and exhibited a short attention span. The ALJ further noted that Amble's findings were inconsistent with other evaluations in the record. Given the number of evaluations which plaintiff has had, the fact that the ALJ discounted Amble's findings is both supported by the record and reasonable in light of the record.

5

rejects the plaintiff's objections thereto. The Court **FINDS** that the decision of ALJ Mills is supported by substantial evidence in the record, read as a whole, and that the plaintiff has not pointed to any errors of law which were made by the ALJ. Accordingly, the Court **AFFIRMS** the final decision of the Commissioner of Social Security that the plaintiff, Danny W. Eubanks, is not disabled and therefore is not entitled to benefits.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE:     March 27, 2008**

                    **s/ WILLIAM D. STIEHL**
                    **DISTRICT JUDGE**